Octavia L. **WASHINGTON**,
**Plaintiff–Appellant,**

v.

**BOARD OF PUBLIC UTILITIES OF the CITY OF KANSAS CITY, KANSAS; City of Kansas City, Kansas; Ed Bortko; Robert Brown; William Ford; Irma Watts; Robert L. Sadrakula; and Terry Drake, Defendants–Appellees.**

**No. 90–3171.**

United States Court of Appeals,
Tenth Circuit.

July 16, 1991.

John H. Fields of Carson & Fields (Blaise R. Plummer, with him on the brief), Kansas City, Kan., for plaintiff-appellant.

Henry Couchman (Daniel B. Denk and Douglas M. Greenwald of McAnany, Van Cleave & Phillips, P.A., with him on the brief), Kansas City, Kan., for defendants-appellees.

Before EBEL and McWILLIAMS, Circuit Judges, and ALLEY,* District Judge.

McWILLIAMS, Circuit Judge.

Octavia L. Washington, an employee of the Board of Public Utilities of Kansas City, Kansas (BPU), brought a civil rights action in the United States District Court for the District of Kansas against BPU and six of its supervisors claiming employment discrimination by BPU because of her race, sex and age.[1] After answer and discovery, all defendants moved for summary judgment. The district court granted the motion and entered judgment in favor of the defendants. Washington appeals. We affirm.

From the complaint we learn that Washington (plaintiff) is a black woman who was born June 13, 1930, and has been an employee of BPU since September 4, 1963. She was initially hired by BPU as a key-punch operator. On April 11, 1975, she was promoted to the position of "Supervisor of Data Entry," which position she held until September, 1984, when, she alleges, she was "discriminatorily demoted" to the position of Lead Clerk in the Data Entry Department. On January 30, 1986, BPU posted a job bid bulletin for the then vacant position of "Supervisor of Billing, Marketing and Customer Services." Plaintiff alleges in her complaint that she was qualified for that position but that she did not get the position which was given to a Caucasian male in his mid-thirties.

Plaintiff goes on to allege in her complaint that on June 13, 1986, she was laid off from her position as Lead Clerk, Data Entry, on a pretext and was forced to bid on entry level positions in order to maintain regular employment. In this regard, on July 15, 1986, plaintiff states that she was awarded a position described as "Janitor–Electric Operation" contingent on passing a rigorous physical examination, which she did. In that position, plaintiff alleged that she was subjected to "intolerable work conditions." Then, on April 11, 1988, she was promoted to the position of "patrol person," which position she held when the present action was initiated.

In Count 1 of her complaint plaintiff alleged that her demotions, her inability to obtain promotions, and her ultimate layoff resulted from BPU's discrimination because of "her race and/or sex and her age." In Count 2 plaintiff alleged that she

---

* Honorable Wayne E. Alley, United States District Judge for the District of Oklahoma, sitting by designation.

1. BPU is a municipal utility of the City of Kansas City, Kansas, which provides water and electricity to its users.

was 56 years of age when BPU began its pattern of discrimination towards her, and that this discrimination was motivated, in part, because of her advancing age. In Count 3 plaintiff alleged that in a prior consent decree BPU had been permanently enjoined from discriminating against its employees based on race, and that BPU had violated the consent decree by discriminating against plaintiff because of her race. The complaint was based on 42 U.S.C. §§ 1981 and 1983, 42 U.S.C. §§ 2000e to 2000e–17, 29 U.S.C. §§ 621–634, and the consent decree filed February 28, 1977, in United States v. City of Kansas City, Kansas, et al., Case No. 76–20–C2, in the United States District Court for the District of Kansas.

By answer, the defendants denied liability to plaintiff. After discovery, the defendants filed a motion for summary judgment. The motion was supported by a 22–page memorandum to which some 18 exhibits were attached. Plaintiff responded with a 17–page memorandum to which 16 exhibits were attached. The defendants then filed a 25–page reply to plaintiff's response.

■ As indicated, the district court, believing the issues had been fully briefed, granted defendants' motion for summary judgment and dismissed the action. The central holding of the district court was that, on the record before it, there was an absence of evidence that the defendants had discriminated against plaintiff because of her race, sex, or age, and further that there was nothing to indicate that the reasons given by the defendants for their various business decisions were pretextual. We agree.

The evidentiary matter before the district court indicated that plaintiff was initially hired by BPU in 1963 as a keypunch operator and that in 1975 she was promoted to Supervisor of Data Entry. In 1984 she was reclassified to Lead Clerk, Data Entry. Further, in 1985 plaintiff was advised that BPU was phasing out its Data Entry Department because of automation and suggested to plaintiff that she bid on other positions at BPU. There is no evidentiary matter even suggesting that this business decision was a pretext for the purpose of discriminating against plaintiff because of her race, sex, or age.

As indicated, in January, 1985, plaintiff bid for the position of Supervisor of Billing, which she did not receive. That position was given to a white male, under the age of forty, who was deemed by management to be better qualified.[2] In her deposition, plaintiff herself declined to testify that she was better qualified than the person hired.

Although the following was not spelled out in her complaint, plaintiff, in her deposition, also complained that she was again discriminated against by BPU when she bid, but did not receive the position of "Console Operator" and another position described as "Transaction Reject Editor." The position of Transaction Reject Editor was given a black female born in 1937, and BPU rejected plaintiff's request that she be permitted to displace or "bump" into the position of Console Operator. Again, there was nothing in the evidentiary matter before the district court to indicate that BPU was motivated by plaintiff's race, sex, or age in rejecting plaintiff's bid for Transaction Reject Editor or Console Operator.

In considering a motion for summary judgment by a defendant, the evidence must be viewed in a light most favorable to the plaintiff. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). If the moving party (the defendants in this case) does not bear the burden of proof at trial, he must demonstrate "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). That burden is met when the moving party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 322–23, 106 S.Ct. at 2552–53. If the moving party meets that

---

**2.** Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on July 1, 1986, after being denied the Supervisor of Billing position. The EEOC dismissed the charge.

requirement, the burden, in a summary judgment context, shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A district court then determines whether a trial is needed, "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

Our study of the evidentiary matter before the district court convinces us that the district court did not err in granting summary judgment. It followed the rules laid down in such cases as *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Because plaintiff failed to produce evidence supporting her discrimination claims and failed to show that defendants' proffered reasons for their actions were pretextual, summary judgment was in order.

As concerns the count based on a consent decree in an earlier proceeding between the United States and BPU, the district court, held that any such claim had to be asserted in the earlier proceeding, and not by an independent action.[3] The consent decree itself certainly suggests such. In any event, having concluded that plaintiff has failed to meet her burden on the issue of racial discrimination, this particular claim would also necessarily fail, since the absence of a *prima facie* case of racial discrimination under 42 U.S.C. § 1981 and 1983 and 42 U.S.C. § 2000e to 2000e–17 also means an absence of a *prima facie* case of any violation under the consent decree.[4]

Judgment affirmed.

---

3. The 1977 consent decree was entered into by the United States (the plaintiff) and the City of Kansas City, Kansas and BPU (the defendants) to resolve charges of discrimination against black employees by BPU.

4. We agree with the district court that under *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), plaintiff does not have a claim under 42 U.S.C. § 1981 for the allegedly intolerable working conditions which she was required to work under while serving as a janitor.