Jim D. COX, Plaintiff,

v.

The BOEING COMPANY; and District Lodge No. 70, International Association of Machinist and Aerospace Workers, AFL–CIO, Defendants.

Civ. A. No. 91–1340–MLB.

United States District Court,
D. Kansas.

Sept. 9, 1993.

Robert S. Allen, Allen Associates, Wichita, KS, Stephen B. Plummer, Sedgwick County Counselor, Wichita, KS, for Jim D. Cox.

J. Steven Massoni, Douglas L. Stanley, Foulston & Siefkin, Wichita, KS, for The Boeing Co.

Thomas E. Hammond, Render, Kamas & Hammond, Wichita, KS, for International Ass'n of Machinist and Aerospace Workers, AFL–CIO, District Lodge No. 70.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on separate motions for summary judgment by defendants The Boeing Company ("Boeing") and District Lodge No. 70 of the International Association of Machinist and Aerospace Workers, AFL–CIO ("the Union"). (Docs. 53 & 55). Plaintiff Jim D. Cox ("plaintiff") filed this suit against Boeing and the Union, asserting a claim under section 301 of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185. Section 301 gives federal courts subject-matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Plaintiff has alleged that he was wrongfully discharged by Boeing, in violation of the collective bargaining agreement between Boeing and the Union, and that the Union breached its duty to fairly represent him by failing to properly investigate and arbitrate his grievance against Boeing.

## STANDARDS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of a moving party who "show[s] that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2516, 91 L.Ed.2d 202 (1986).

The burden of proof at the summary judgment stage is similar to that at trial. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). Once the moving party properly supports its motion, the non-moving party "may not rest upon mere allegation or denials in his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Shapolia v. Los Alamos Nat'l Laboratory,* 992 F.2d 1033, 1036 (10th Cir.1993). "A genuine issue 'must be predicated on a viable legal theory.'" *Windon Third Oil & Gas v. F.D.I.C.,* 805 F.2d 342, 346 (10th Cir.1986) (citation omitted).

▪ The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. If the nonmoving party fails to make a factual showing which, viewed in a light most favorable to him, establishes the existence of an element essential to that party's case, then summary judgment is appropriate. *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991). Summary judgment is inappropriate, however, if there is sufficient evidence on which the trier of fact could reasonably find in the nonmoving party's favor. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

### FACTUAL FINDINGS

Construing the record in a light most favorable to the plaintiff, the court makes the following findings of fact for purposes of both Boeing's and the Union's motions for summary judgment:

1. Plaintiff was employed by Boeing as a sheet metal mechanic from August 10, 1984 until January 28, 1991, when his employment was terminated. Plaintiff's job involved the riveting of aluminum skins on Boeing 737 aircraft frames. He worked the second shift, 3:30 p.m. to 12:00 a.m., at Boeing Shop No. 2960.

2. Defendants Boeing and the Union entered into a collective bargaining agreement on November 22, 1989. The collective bargaining agreement is intended to govern the relations between Boeing and its employees represented by the Union. It expressly recognizes the Union as the *exclusive* collective bargaining agent for all employees covered by the agreement.

3. Plaintiff was not a member of the Union. He was, however, a member of the bargaining unit and was covered by the collective bargaining agreement between Boeing and the Union.

4. In January 1991, near the time that the United States began its air attacks on Iraq during the Persian Gulf War, plaintiff used scrap metal from the Boeing shop where he worked to construct an object which, according to photographs presented to this court, could most accurately be likened to a miniature bomb. Plaintiff took a piece of aluminum resembling a bowling pin and riveted small metal fins to its narrow end. Later, using material from the Boeing plant, plaintiff painted the toy bomb and, with his own colored marker, drew an American flag on it. Plaintiff claims that he assembled the toy bomb during a break from work.

5. The aluminum, bowling pin-like piece that formed the main shaft of plaintiff's toy bomb had been setting in the shop where plaintiff worked for as much as one and a half years. Many of plaintiff's co-workers had seen and were familiar with the aluminum piece.

6. Plaintiff and a fellow co-worker played with the toy bomb during their shift, "shooting baskets" with it into a trash can. It is not clear how long they participated in this activity, although it appears to have been a relatively brief period of time.

7. On January 22, 1991, at approximately 1:00 a.m., a member of the third shift crew named Patrick Roskilly found plaintiff's toy

bomb. Mr. Roskilly claims that he had never seen the toy bomb or the aluminum "pin" prior to that time.[1] (Roskilly's Depo., pp. 13, 15). After inspecting the device "to see if it had any substance to it," Mr. Roskilly doubted it was a real bomb. (Roskilly's Depo., p. 20). Nevertheless, because Boeing employees had been instructed to call security if they found anything suspicious, Mr. Roskilly phoned security and told them about the device. (Roskilly's Depo., p. 34). He informed security that he did not think the device was real. (Roskilly's Depo., p. 19–20).

8. Boeing security officers subsequently arrived on the scene. One of the security officers picked up the supposed bomb and shook it. (Roskilly's Depo., p. 20–21). An order was made for the entire area to be cleared, and the Sedgwick County bomb squad was called.

9. On January 22, 1991, plaintiff was placed on indefinite suspension while the toy bomb incident was being investigated. Boeing conducted an inquiry into the matter, and plaintiff admitted that he had constructed the device. Boeing then terminated plaintiff's employment on January 28, 1991.

10. Prior to his termination, Boeing had disciplined plaintiff for improper conduct on two prior occasions: July 25, 1988 and March 17, 1989. In both cases, Boeing issued Corrective Action Memos CAMs) against plaintiff which were placed in plaintiff's file, where they were to remain for no longer than eighteen months. According to Boeing, the CAMs were removed from plaintiff's file at the appropriate time and played no role in

the decision to terminate plaintiff's employment.[2]

11. After learning of his termination on January 28, 1991, plaintiff filed a grievance against Boeing with the Union. He discussed his situation with a union representative, Tommy Nicholson, who became responsible for plaintiff's case. Mr. Nicholson reviewed the Boeing security report and results of the Boeing investigation, conducted his own interviews of witnesses identified by plaintiff, and discussed plaintiff's case with Boeing Labor Relations in an effort to get plaintiff's job back. Boeing refused to reinstate plaintiff. After completing his investigation, Mr. Nicholson reviewed his findings with five other union representatives and with the Union's Directing Business Representative. The Union ultimately decided not to pursue plaintiff's case to arbitration. Plaintiff was subsequently advised of the Union's decision and, on August 12, 1991, filed this action against both Boeing and the Union.

*PARTIES' CONTENTIONS*

Defendants Boeing and the Union both claim that they are entitled to summary judgment because plaintiff has presented no evidence from which the trier of fact could legitimately find that the Union breached its duty of fair representation. Furthermore, Boeing contends that, even if the Union did breach its duty of fair representation, Boeing did not violate the collective bargaining agreement in discharging plaintiff from his job.

---

1. Plaintiff flatly states that Mr. Roskilly *had* seen the aluminum pin on prior occasions. He points to the affidavits of Scott Ray Dean and Rickey L. Rainey. In his affidavit, Mr. Dean claims that Mr. Roskilly was often part of a group of employees who, during break, had many discussions about the aluminum "pin" constituting the main part of the toy bomb. Plaintiff maintains that Mr. Roskilly was among those employees familiar with the aluminum "pin" and that "Mr. Roskilly knew that the object was not an explosive device." (Doc. 66, p. 8). This factual dispute concerning the extent of Mr. Roskilly's prior knowledge, however, is not *material* to plaintiff's claims against Boeing and the Union. The real issue is whether Boeing and the Union, given their knowledge at the time the bomb was report-

ed and plaintiff's subsequent admission that he was the one who constructed the device, handled the situation in accordance with the collective bargaining agreement and the Union's duty of fair representation. Mr. Roskilly's knowledge that the device was merely a toy, or lack thereof, is inconsequential to the determination of that issue.

2. Plaintiff has contended that Boeing took into consideration the outdated CAMs when it discharged him. Boeing, however, maintains that the CAMs were purged from plaintiff's file, and plaintiff has offered no evidence to the contrary. (Doc. 68, pp. 7, 24).

Plaintiff sets forth two arguments against summary judgment. First, plaintiff argues that he has set forth sufficient evidence that the Union did not carry out its duty of fair representation. Second, plaintiff argues that, even if there is not sufficient evidence that the Union did not fairly represent him, the court should nevertheless allow his action against Boeing to proceed because he was not a member of the Union and his remedies against Boeing are, therefore, not limited by the collective bargaining agreement between Boeing and the Union.

## DISCUSSION

■ Plaintiff has filed what is commonly referred to as a "hybrid" action under section 301 of the Labor Management Relations Act (LMRA). *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir.1992) (citations omitted). In a hybrid action, an employee makes claims against both his former employer and his union based on an alleged violation of the collective bargaining agreement by the former employer and an alleged breach of the duty of fair representation by the union. *See id.* The nature of such an action is dependent upon the collective bargaining agreement that exists between the former employer and the union:

Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance. Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation.

*Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (citations omitted); *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419, 1422 (10th Cir.1993) (quoting *Terry*, 494 U.S. at 564, 110 S.Ct. at 1344). Hence, decisions arrived at via the procedures outlined in a collective bargaining agreement are ordinarily "accorded finality." *Id.* Unless an employee can show that the union failed to fairly represent him in his claim against his former employer, the employee will not be allowed to pursue a direct action against his former employer for breach of the collective bargaining agreement under section 301. *Vaca v. Sipes*, 386 U.S. 171, 186–87, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967); *Mock*, 971 F.2d at 531 (holding that proof of union's breach of duty to fairly represent is an "essential element" of employee's hybrid suit) (citing *Terry*, 494 U.S. at 564, 110 S.Ct. at 1344; *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight Co.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976)) (other citations omitted).[3]

In the present case, the relations between Boeing and plaintiff are governed by a detailed collective bargaining agreement. The agreement provides that "matters dealing with the interpretation or application" of the terms of the agreement must be settled according to grievance and arbitration procedures outlined therein and recognizes the

---

**3.** This rule of law is intended to ensure that individual employees receive a fair review of their grievances:

[T]he United States Supreme Court has recognized that [the remedies provided in a collective bargaining agreement], devised by and often directly controlled by the union and the employer, may be unworkable for individual grievants in certain situations.... Consequently, the Court has recognized that a plaintiff may seek a judicial enforcement of his contractual right if he can prove that the Un-

ion, as a bargaining agent, breached its duty of fair representation in handling his grievance, thereby frustrating his attempts to vindicate his termination by contractual remedy.... Otherwise, a wrongfully discharged employee could be frustrated in obtaining a remedy against the employer solely because his union breached its separate duty to fairly represent him in pursuing the grievance process.

*Valdivia v. Ohse Foods, Inc.*, 820 F.Supp. 574, 580–81 (D.Kan.1993) (citing *Vaca*, 386 U.S. at 185–87, 87 S.Ct. at 914–15) (other citations omitted).

Union as the exclusive bargaining agent.[4] Thus, employees who are subject to the collective bargaining agreement must look to the grievance and arbitration remedies provided for in the agreement in settling their disputes with the company. The decision of whether and how to pursue such remedies lies in the hands of the Union, as exclusive bargaining agent. In plaintiff's case, the Union investigated plaintiff's grievance against Boeing and determined that arbitration was not worth pursuing. Plaintiff claims that, in doing so, the Union breached its duty of fair representation.

### A. The Union's Duty of Fair Representation

■ It is well established that a union does not breach its duty of fair representation by merely refusing to take an employee's grievance to arbitration. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *Chernak v. Southwest Airlines Co.,* 778 F.2d 578, 581 (10th Cir. 1985); *McLinn v. Boeing Company,* 715 F.Supp. 1024, 1031 (D.Kan.1989). Likewise, proof that an employee's grievance was meritorious is insufficient to show that the union failed to fairly represent him. *Vaca,* 386 U.S. at 192–95, 87 S.Ct. at 918–19; *McLinn,* 715 F.Supp. at 1031–33. Instead, a breach occurs when the union's conduct towards the employee is "arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916; *Aguinaga v. United Food & Com. Workers Intern.,* 993 F.2d 1463, 1470 (10th Cir.1993) (quoting *Vaca* ); *Jarvis,* 985 F.2d at 1422 (quoting *Vaca* ); *Mock,* 971 F.2d at 531 (citing *Vaca* ). The situations in which a union's conduct will be considered "arbitrary, discriminatory, or in bad faith" are significantly limited:

A union's actions are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." . . . A union's discriminatory conduct violates its duty of fair representation if it is "invid-

ious." . . . . Bad faith requires a showing of fraud or deceitful or dishonest action.

*Aguinaga,* 993 F.2d at 1470 (citations omitted). In short, in attempting to prove that a union breached its duty of fair representation, a plaintiff bears the substantial burden of showing that the union behaved irrationally, invidiously discriminated against him, or acted in a fraudulent, deceitful, or dishonest manner. Evidence that the union was negligent is not enough. *Valdivia v. Ohse Foods, Inc.,* 820 F.Supp. 574, 582 (D.Kan.1993) (citing *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372–73, 376, 110 S.Ct. 1904, 1911, 1913, 109 L.Ed.2d 362 (1990)).

■ Defendants Boeing and the Union contend that the evidence plaintiff has set forth reveals no conduct on the part of the Union or its representatives that could properly be considered either arbitrary, discriminatory, or in bad faith. Plaintiff, on the other hand, maintains that sufficient evidence of such conduct has been presented. Plaintiff's principal contention is that Mr. Nicholson, the union representative that handled his grievance, did not conduct an adequate and complete investigation before deciding not to pursue plaintiff's case to arbitration. Specifically, plaintiff claims that Mr. Nicholson failed to interview all of the people who plaintiff suggested he interview, that the interviews Mr. Nicholson did conduct were cursory and incomplete, and that Mr. Nicholson relied almost entirely on information provided to him by Boeing in reaching his conclusions about the merits of plaintiff's grievance. According to plaintiff, the Union would have reached a different conclusion and chosen to arbitrate his grievance if Mr. Nicholson's investigation had been more thorough. The court finds plaintiff's argument to be unpersuasive.

Plaintiff relies primarily on *Ames v. Westinghouse Elec. Corp.,* 864 F.2d 289 (3d Cir. 1988) as authority for his contention that the actions of Mr. Nicholson, or lack thereof, constitute a breach of the duty of fair representation. (Doc. 65, p. 11; Doc. 66, pp. 17–20; Doc. 92, p. 1). In *Ames,* as in the

4. See article 1, section 1.1 and article 19, section 19.1 of the collective bargaining agreement between Boeing and the Union.

present case, a laid-off employee brought a hybrid action against his former employer and union under section 301 of the LMRA. *Id.* at 290. The allegedly aggrieved employee claimed, *inter alia,* that the union had breached its duty of fair representation by not pursuing a contract grievance arbitration remedy on the employee's behalf. *Id.* In assessing this claim, the court held that a union must give "fair and prompt consideration" to an employee's claim and, "if dictated by controlling legal standards," pursue his claim under contract dispute resolution procedures. *Id.* at 293.

Plaintiff contends that, in the present case, the Union did not comply with the standards set forth in *Ames.*[5] The evidence presented by plaintiff, the Union, and Boeing, however, reveals otherwise. First, the evidence shows that the Union and its representative, Mr. Nicholson, gave "fair and prompt consideration" to plaintiff's claim. *Id.* Upon plaintiff's filing his grievance with the Union, Mr. Nicholson discussed the matter with plaintiff, he obtained pertinent information from plaintiff's employer, and he conducted numerous

interviews with individuals who allegedly had some knowledge of the events leading to plaintiff's termination. Plaintiff's allegations that Mr. Nicholson's interviews were cursory and incomplete is not substantiated by the evidence.[6] Likewise, plaintiff's claim that Mr. Nicholson relied almost entirely on information from Boeing is without corroboration. Mr. Nicholson clearly referred to information obtained from Boeing and to information obtained through his own independent investigation in arriving at the conclusion that plaintiff's grievance was not worth arbitrating.

■ Second, given the results of Mr. Nicholson's inquiry into plaintiff's claim, the Union's decision not to arbitrate clearly appears to have been "dictated by controlling legal standards" and not by arbitrary, discriminatory, or bad faith considerations. *Id.* The information Mr. Nicholson was able to uncover revealed a sound basis for Boeing's termination of plaintiff's employment and strongly suggested that arbitration would be fruitless.[7] Hence, plaintiff's reliance on the decision in *Ames* is unavailing.

5. Specifically, plaintiff cites *Ames* as support for the following argument:

> If the duty of fair representation requires conducting a separate and independent investigation of the facts in the matter, meeting with the employee, discussing the claims, and suggesting potential supplementary or alternative arguments so as to establish and put forward the strongest possible arguments which can be made on the employees behalf, (citing *Ames* ), then Mr. Nicholson's activities failed miserably.

(Doc. 66, p. 20). No such language appears in *Ames.*

6. Among Mr. Nicholson's interview results were the following: (1) Steve Hottle, a Boeing employee, stated that he had never seen anyone play with the toy bomb, but indicated that plaintiff had made it; (2) Gary Brown, a Boeing employee, indicated that plaintiff had made the toy bomb and that the main aluminum piece had been around for at least five months; (3) Freddie Gaboda, Boeing employee, stated that everyone on plaintiff's shift had seen the object and knew that it was only a toy; (4) Joe Shook, a Boeing employee, stated he had seen the object laying on plaintiff's table; (5) Davy Meyers, a Boeing employee, indicated that most of the employees in plaintiff's shop had played with the object; (6) An employee with the last name "Kase" indicated that employees "pick up scrap all the time and make things." In addition, Mr. Nicholson

talked with other Boeing employees who denied having anything to do with plaintiff's toy bomb. (Mr. Nicholson's Depo., pp. 6–26).

One potential witness, Scott Dean, apparently was not interviewed by Mr. Nicholson. In a deposition taken for purposes of this case, Mr. Dean has testified that Mr. Roskilly knew the bomb was not real when he discovered it. Plaintiff has asserted that if Mr. Nicholson had interviewed Mr. Dean and elicited this information from him, the Union would have chosen to go ahead and arbitrate plaintiff's grievance. However, the information Mr. Nicholson could have obtained from Mr. Dean was merely cumulative. Mr. Roskilly had, in fact, told Boeing security that he believed the bomb was a "fake" when he reported it. Thus, Mr. Nicholson's failure to interview Mr. Dean does not appear to have materially affected the Union's decision not to arbitrate. No matter what information Mr. Dean might have given Mr. Nicholson, it was certainly not enough to raise a factual issue concerning whether the Union breached its duty of fair representation.

7. The Boeing Company Employee Handbook indicates that, among other things, Boeing employees are prohibited from misusing company time and company property, interfering with production, and engaging in horseplay. Plaintiff's conduct appears to have violated each of these prohibitions.

■ In summary, this court's review of the record reveals no factual controversy material to the issue of whether the defendant Union acted arbitrarily, discriminatorily, or in bad faith in handling plaintiff's grievance. To the extent that factual disputes do exist, they revolve around how the facts were interpreted by Boeing and the Union, not whether significant facts were arbitrarily overlooked or undeveloped. Plaintiff contends the facts showed nothing more than a harmless prank. The facts as viewed by Boeing and the Union demonstrated a significant violation of company policy sufficient to justify plaintiff's termination. This type of dispute does not present a jury question. It is not the function of the jury in cases such as this to second-guess decisions of the Union.

A trial is required only if a factual dispute genuinely exists over whether the Union acted toward plaintiff in an arbitrary or discriminatory manner or otherwise in bad faith. No such issue exists in this case. Accordingly, the evidence, viewed in the light most favorable to the plaintiff, is insufficient as a matter of law to establish that the Union breached its duty of fair representation. The Union's motion for summary judgment will, therefore, be granted. However, the plaintiff's alternative argument must be addressed before the court may determine whether defendant Boeing is also entitled to summary judgment.

### B. Plaintiff's Right to Pursue a Direct Action Against Boeing

As discussed *supra*, proof of a union's failure to fulfill its duty of fair representation is ordinarily a prerequisite to a section 301 claim against an employer. In the present case, however, plaintiff argues that, even if there is not sufficient evidence that the Union breached its duty of fair representation, he should still be allowed to pursue an action against his employer, Boeing. Plaintiff contends that because he was not a member of the Union, he is not limited to the grievance procedures outlined in the Union's collective bargaining agreement with Boeing. The court disagrees.

■ Because plaintiff's claim against Boeing is based on an alleged breach of the collective bargaining agreement between the Union and Boeing, plaintiff is "bound by the terms of that agreement governing the manner in which his contractual rights may be enforced." *Valdivia v. Ohse Foods, Inc.*, 820 F.Supp. 574, 580 (D.Kan.1993) (citing *Vaca*, 386 U.S. at 184, 87 S.Ct. at 913) (other citation omitted). The fact that plaintiff is merely a member of the bargaining unit covered by the collective bargaining agreement and was not actually a member of the Union is inconsequential. *Britt v. Trailmobile Co., Mappes v. Trailmobile Co.*, 179 F.2d 569, 572 (6th Cir.1950) ("Collective bargaining agreements are made by a bargaining agent selected by a majority of the working force and are binding upon all employees. One who benefits as the result of such collective agreements must ... accept not only its advantages but its limitations.")

■ Plaintiff's section 301 action is predicated on Boeing's alleged breach of the collective bargaining agreement.[8] That agreement provides that the Union is to be the exclusive representative of employees covered by the agreement in their disputes with the company. The Union is therefore under an obligation to act for the benefit of all employees within in its bargaining unit, whether or not they are members of the Union. *American Fed'n of Gov't Employees v. Federal Labor Relations Authority*, 812 F.2d 1326, 1328 (10th Cir.1987) ("[W]hen a union bargains for a grievance procedure in which it participates as the sole representative of all employees, the duty requires that the union's representation cannot be dependent upon union membership."). Thus, the Union was required to fairly represent the plaintiff in the present case and, as discussed *supra*, fulfilled that requirement. That be-

---

**8.** Plaintiff contends that Boeing breached the collective bargaining agreement by overreacting to his conduct, that is, by discharging him for horseplay when Boeing, in other unspecified instances, had overlooked horseplay. Although the court need not reach this issue in view of plain-

tiff's inability to demonstrate that the union failed to fairly represent him, the court is satisfied that no genuine issue of material fact is presented by Boeing's decision to discharge plaintiff which, under the circumstances, was reasonable.

ing the case, plaintiff has no cause of action against his former employer, Boeing, under section 301 of the LMRA. Plaintiff is not somehow released from the limitations of the collective bargaining agreement, under which he seeks to benefit by suing Boeing, simply because he is not a member of the Union.

Plaintiff further argues that this court should, as a matter of equity, allow him to proceed with his action against Boeing because the Union's representation is intended to promote the collective good of those in the bargaining unit, not the interests of an individual employee. He points to a Kansas Supreme Court decision, *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 814–15, 752 P.2d 645 (1988), which acknowledges that the employee is "forced to submit his grievance under an agreement which was never designed to protect individual workers, but to balance the individual against the collective interest."

Plaintiff's argument fails in two respects. First, it fails to recognize that one of the reasons why the duty of fair representation is imposed on the Union is to protect individual employees from actions by the Union which arbitrarily, discriminatorily, or in bad faith sacrifice the individual employee's interests for the supposed good of the whole. Second, plaintiff's argument is based on an incorrect reading of the *Coleman* opinion. *Coleman* involved an action predicated on the violation of a state law prohibiting retaliatory discharge.[9] The language to which plaintiff points in support of his argument is merely a recognition by the Kansas Supreme Court that, if summary judgment with respect to plaintiff's state law claim was granted, he would be relegated to a section 301 claim under the LMRA in federal court, requiring him to prove that the union breached its duty of fair representation. *Id.* at 814–15, 752 P.2d 645. Thus, this court is only applying an established rule of law that the Kansas

Supreme Court, in *Coleman*, has acknowledged to be true: Plaintiff's section 301 claim is limited by his inability to prove that the Union breached its duty of fair representation. The court is not prepared to abandon that rule.

**IT IS ACCORDINGLY ORDERED** this 9th day of September, 1993, at Wichita, Kansas, that defendant District Lodge No. 70 of the International Association of Machinist and Aerospace Workers's motion for summary judgment (Doc. 55) and defendant The Boeing Company's motion for summary judgment (Doc. 53) are hereby granted.

Any motions for reconsideration of this order shall be limited to fifteen pages. Responses and replies shall be limited to ten and five pages, respectively. All page limits include attachments and appendices.

---

9. The specific holding of *Coleman* is as follows: [E]mployees covered by collective bargaining agreements who are wrongfully discharged in violation of state public policy, in this case the policy underlying the Worker's Compensation Act, have a tort cause of action for retaliatory discharge. We stress that by recognizing the cause of action for Coleman, we do not hold that employees covered by collective bargaining agreements have a tort cause of action for

wrongful discharge in general. Our recognition of such causes of action is limited to wrongful discharge in violation of state public policy clearly declared by the legislature or by the courts.
242 Kan. at 815, 752 P.2d 645. This case, of course, does not present any public policy issue. The court declines plaintiff's request that this court expand *Coleman* to non-public policy issues. (Doc. 92, p. 3).