Todd L. MITCHELL, Lauren A. Hayes, Jerald B. Hall, Graham J.D. Heatherington, and Ricky R. Rea, Plaintiffs,

v.

FALLEY'S INC., a Kansas Corporation, Falley's, Inc. Employee Stock Ownership Plan, Ronald W. Burkle and W. Kent Laughman, Defendants.

Civil Action No. 94–1256–MLB.

United States District Court,
D. Kansas.

March 11, 1997.

Jerald B. Hall, Graham J.D. Heatherington, Ricky T. Rea.

Kevin J. Arnel, Darrell L. Warta, Foulston & Siefkin, Wichita, KS, for Falley's Inc., Ronald W. Burkle, W. Kent Laughman.

Kevin J. Arnel, Darrell L. Warta, Foulston & Siefkin, Wichita, KS, Larry A. Withers, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, Ronald S. Rizzo, James A. White, Jones, Day, Reavis & Pogue, Chicago, IL, for Falley's Inc. Employee Stock Ownership Plan.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant Falley's Inc.'s ("Falley's") motion for summary judgment (Doc. 45); defendant U.S. Trust's motion for summary judgment (Doc. 46)[1]; plaintiffs' memorandum in opposition to summary judgment (Doc. 50) and Falley's reply (Doc. 51).

### FACTUAL BACKGROUND

The following facts are uncontroverted unless otherwise noted. The court interprets the facts in a light most favorable to plaintiffs for purposes of this motion for summary judgment.

### I. The Parties

Defendant Falley's is a Kansas corporation. On June 1, 1987, Food For Less Partners ("FFLP"), an affiliate of the Yucaipa Companies, acquired Falley's (Doc. 40 at 4). The acquisition and restructuring of Falley's had three effects on its former retirement plans: first, all plans maintained prior to 1988, including those in which plaintiffs participated, were merged into a single Employee Stock Ownership Plan ("ESOP") (*Id.* at 5); second, the ESOP sold its Falley's stock to FFLP, and in its place, purchased stock of Food 4 Less, Inc., a close corporation subsidiary of FFLP (Doc. 51 Ex. F at 6, Doc. 50 Ex. 22 at 1) at a price of $6.285 per share

John C. King, Law Office of John C. King, Ltd., Wichita, KS, John L. Brennan, Wichita, KS, for Todd L. Mitchell, Lauren A. Hayes,

---

1. U.S. Trust serves as trustee of Falley's Employee Stock Ownership Plan ("ESOP" or the "Plan"). U.S. Trust asserts that it is a nominal defendant and plaintiff has not asserted any independent claims of liability against it. It joins Falley's motion for summary judgment. (Doc. 46 at 1). Plaintiff concedes that U.S. Trust is a nominal defendant (Doc. 50 at 5). Thus, while the court will only discuss defendant Falley's, its rulings will apply to U.S. Trust as well.

(Doc. 40 at 4) and; third, FFLP assumed Falley's obligations to honor "put options" arising under the ESOP (Doc. 50 Ex. 8 at 2).[2]

Plaintiffs are former employees of Falley's who worked for the company during the following periods:

Hayes: October 6, 1987—December 29, 1990
Mitchell: September 17, 1982—December 28, 1991
Rea: August 21, 1985—March 30, 1991
Hall: July 14, 1990—December 21, 1991
Heatherington: March 18, 1988—May 8, 1991

(Doc. 40 at 4). All of the plaintiffs were participants in the ESOP at the time they terminated their employment with Falley's (Doc. 45 at 6).

## II. Plan Description

Falley's established the ESOP to function as a retirement vehicle for its employees. The Plan was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Doc. 40 at 2). The ESOP Administrative Committee ("Committee") served as the named fiduciary of the ESOP, and was responsible for its administration (Doc. 40 at 5). The ESOP was a qualified retirement plan which met the requirements of 26 U.S.C. § 401(a). Like all ESOP's established under 26 U.S.C. § 409, 29 C.F.R. § 2550.407d–6 and 29 C.F.R. § 2550.408b–3, it invested heavily in securities affiliated with the employer corporation (Doc. 50 Ex. 22 at 1), in this case, Food 4 Less stock. The ESOP was relatively large, numbering 1,065 employee participants in 1991 (Doc. 45 at 9).

Section 7.1 of the Plan provides that any ESOP participant who terminates employment for reasons other than death, disability,

or retirement is entitled to a distribution of his vested interest in the ESOP (Doc. 50 Ex. 7 at 1). Section 7.2 provides that this distribution will occur "60 days after the end of the last Plan Year [3] in which his termination of employment occurs or as soon thereafter as is practicable." (Id.)

Normally, a determination of the fair market value of the stock takes place annually under Section 6.1 (Doc. 50 Ex. 5 at 1). However, when a distribution is payable and the Committee believes that the value of the stock has changed substantially since the last valuation, the Committee is required to ask the Trustee in writing to conduct a new valuation of the stock as of a past, present, or future date specified by the Committee (Id. at 1–2).

The Houlihan, Lokey, Howard, & Zukin firm ("Houlihan") prepared the following valuations of the fair market value of Food 4 Less stock:

| Valuation Date | Share Price |
| --- | --- |
| December 31, 1991 | $19.52 |
| June 30, 1992 | $10.36 |
| November 15, 1992 | $ 8.94 |
| December 31, 1992 | $ 4.13 |
| October 31, 1993 | $ 9.65 |

(Doc. 40 at 5). These values are not contested by the parties.[4]

## III. Chronology of Events and Correspondence

Plaintiffs either admit, or fail to deny, that they received notice of the 1988 merger of the prior Plans into the ESOP (Doc. 45 at 6). Falley's submits an affidavit stating that it

---

2. Because the company stock in which the ESOP invests is not publicly traded, Section 10.7 of the Plan provides that the participant receiving his benefit shares has a put option to the company. This put option is valid for 60 days after the distribution of shares, and then for an additional 60 days in the following Plan Year. The put price of the distributed stock is its fair market value as determined by an independent appraiser in accordance with 26 U.S.C. § 401(a)(28)(C). This amount may be paid in a lump cash sum, or in periodic payments over 5 years, provided that adequate security is given and a reasonable interest is paid on the amount owed. (Doc. 50 Ex. 3 at 1).

3. The court was never provided with a definition the "Plan Year". Because the annual account

balance statements provided to participants, see, e.g., (Doc. 50 Ex. 12) appear to run on the calendar year, however, the court will assume that a Plan Year ends Dec. 31.

4. Nor are the reasons for the decline in the stock's value appropriately contested. Defendants contend that the depressed economy of the early 1990's, especially in Southern California, and the damage caused to the company's business by the riots in Los Angeles, caused the rapid changes in the value of Food 4 Less stock (Doc. 45 Ex. e). Plaintiffs contend that delays in processing plaintiff's distribution forms caused a change in the value of the stock (Doc. 50 at 2). Plaintiffs offer no explanation or support for this unique economic theory and the court rejects it.

provides notice to ESOP participants by in-hand delivery, enclosures in paycheck envelopes and first-class mail (Doc. 45 Ex. B).[5]

In December 1991, plaintiffs received yearly accounting statements reflecting their respective benefit assets in the stock of Food 4 Less and its worth as appraised by Houlihan (Doc. 50 Ex. 10–14). These statements valued the Food 4 Less stock at $19.52 per share (*Id.*).

Around June 30, 1992, the Committee opined that the value of Food 4 Less stock had substantially changed since its last valuation on December 31, 1991. Thus, as mandated by Section 6.2, the Committee requested an additional stock valuation (Doc. 45 at 7, 9). Houlihan valued the stock at $10.36 per share on June 30, 1992 (Doc. 50 Ex. 15 at 2). On November 15, 1992, the Committee was concerned about the volatility of the Plan's stock, again opined that its value stock had substantially changed and requested an additional valuation. Houlihan valued the stock at $8.94 on November 15, 1992.

After receiving this valuation, a full year after the end of the Plan Year in which plaintiffs had terminated their employment, the Committee sent distribution forms and notice of the recent developments in stock price to plaintiffs (Doc. 45 at 7; Doc. 50 Ex. 8 at 1–6; Doc. 45 Ex. F at 1–10).

Plaintiffs did not return the forms provided by the ESOP; instead, they returned forms prepared by their counsel (Doc. 45 at 7–8; Doc. 50 Ex. 18). The Committee refused these forms and required that their own forms be used (Doc. 45 Ex. H at 1–2). Plaintiffs contested this rejection, along with the use of stock valuations later than December 31, 1991 and the proposed payment of the put option with a secured bond.

The Committee sent a formal statement of its position regarding plaintiff's claims on June 16, 1993 (Doc. 50 Ex. 1). The Committee noted that plaintiffs had not taken advantage of its offer to allow attachments to the ESOP forms reserving specific rights, and instead had refused to submit the forms altogether. Therefore, the Committee's position was that plaintiffs were not yet entitled to a distribution of their benefits (*Id.* at 2). Because plaintiffs did not receive the distribution of their shares, they had no put option to exercise (*Id.* at 3). Finally, the statement noted that Section 10.7 provided that the put price would be the fair market value for the shares (as opposed to the December 31, 1991 price), and clearly authorized the use of a bond for payment (*Id.* at 3–4).

On December 7, 1993, plaintiffs completed the standardized ESOP forms for distribution of stock, and put their shares to the company at the October 31, 1993 valuation of $9.65 per share (Doc. 45 Ex. I). On December 24, 1993, plaintiffs received payment from the ESOP for this put option in the following amounts:

| | |
|---|---|
| Mitchell | $54,234.11 |
| Rea | $12,154.36 |
| Heatherington | $ 7,350.90 |
| Hall | $15,037.40 |

(Doc. 40 at 6).

## STANDARDS FOR SUMMARY JUDGEMENT

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discov-

---

**5.** Plaintiffs attempt to create a disputed issue of . fact by arguing that the evidence does not show that "numerous" items of notice were given to plaintiffs, but the deposition testimony cited does not support this contention (Doc. 50 Ex. 6). Moreover, plaintiffs never explain why the quantity of notice is material.

ery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). Once the moving party properly supports its motion, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726 (10th Cir.1991). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

## DISCUSSION

Plaintiffs bring this action pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides that a participant may bring a civil action "to recover benefits due to him under the terms of the plan, [or] to enforce his rights under the terms of the plan". *Id.* The issues in this case, as set out in the Pre–Trial Order, are: (1) whether the ESOP was required to pay plaintiffs based upon the December 31, 1991 valuation ($19.52 per share) as opposed to a subsequent valuation date;

(2) whether the Committee was required to accept the distribution forms prepared by plaintiffs' counsel, or could require that its own distribution forms be used and; (3) whether plaintiffs received notice of the merger of the prior Plans into the ESOP (Doc. 40 at 7). The court will discuss the appropriate standard of review, then address these three issues in turn.

### I. Standard of Review

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See also, Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 (10th Cir.1996) (discussing *Firestone*). If a plan gives the fiduciary such discretionary authority, a reviewing court must uphold the fiduciary's decision unless it was arbitrary and capricious. *Chambers,* 100 F.3d at 825 & n. 1.[6]

■ Falley's points to Section 14.1 of the Plan, which provides:

> The Committee shall determine any and all questions of fact, resolve all questions of interpretation of this instrument which may arise under any of the provisions of this Plan and Trust ... and exercise all other powers and discretion necessary to be exercised under the terms of this Plan and Trust which it is herein given or for which no contrary provision is made.

(Doc. 45 at 16–17).

Section 14.1 also provides that "the Committee's decision with respect to any matter shall be final and binding upon the Trustee and all other parties concerned, and the Committee shall not be liable in that regard except for gross abuse of the discretion given

---

6. Plaintiffs do not argue that a conflict of interest existed which would require less deference to the

Committee's decision. *See id.* at 826–27.

to it under the terms of this Plan and Trust." (*Id.* at 17).

Under this language, the Committee is clearly given broad discretion to "construe the terms of the plan," *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957, and thus, the court must apply an arbitrary and capricious standard of review. *See Chambers,* 100 F.3d at 825 n. 1; *see also Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1457 (10th Cir. 1991) (applying arbitrary and capricious standard where plan gave administrator "full and complete authority, responsibility, and control over the management, administration and operation of the Plan, including, but not limited to, the authority to ... [m]ake appropriate determinations ... of the distributions due Members under the Plan [and a]uthorize and direct payment of benefits"); *Pratt v. Petroleum Prod. Management, Inc. Employee Savings Plan,* 920 F.2d 651, 657 n. 7, 658 (10th Cir.1990) (applying arbitrary and capricious standard under similar language).

Nevertheless, plaintiffs argue that *de novo* review is appropriate here. Plaintiffs first argue that Section 14.1 was drafted before the Supreme Court's decision in *Firestone* (Doc. 50 at 9). This is irrelevant; if the Plan grants discretionary authority, it grants discretionary authority. No "magic words" are required. *See Torre v. Federated Mut. Ins. Co.,* 854 F.Supp. 790, 813 (D.Kan.1994), *overruled on other grounds, Chambers,* 100 F.3d at 826.

Second, plaintiffs note that this case does not concern eligibility for benefits, implying that the *Firestone* holding is limited to discretion regarding eligibility decisions (Doc. 50 at 9). However, *Firestone* also expressly applies to discretion to construe the terms of a plan. *Firestone,* 489 U.S. at 115–17, 109 S.Ct. at 957.

Third, plaintiffs focus on the language of Section 6.2 of the Plan, arguing that it contains "mandatory" language that defeats the discretionary authority of the Committee (Doc. 50 at 10–11). Section 6.2 provides:

In the event a distribution shall be payable out of the Trust and the Committee shall be of the opinion that the amount of assets allocable to Accounts shall have changed substantially since the most recent valuation date, the Committee shall instruct the Trustee in writing to evaluate the assets of the Trust in accordance with the methods contained in Section 6.1 as of a date, past, present, or future, specified by the Committee. If the value of the assets so determined as of the specified date shall be 10% greater or less than the amount of assets then credited to all Accounts, the Trustee shall adjust all of the Accounts in accordance with the methods and procedures contained in Section 6.1 as of the date specified by the Committee.

(Doc. 50 Ex. 5). Because the revaluation described in Section 6.2 is "mandatory," plaintiffs argue the court should apply a *de novo* standard of review (Doc. 50 at 9).

While the court recognizes that discretionary authority is not an all-or-nothing proposition, *see Anderson v. Great West Life Assur. Co.,* 942 F.2d 392, 395 (6th Cir.1991) ("A plan can give an administrator discretion with respect to some decisions, but not others"), the court does not view Section 6.2 as vitiating the discretion of the Committee. While Section 6.2 contains some mandatory phrasing, an interim valuation is only triggered if the Committee is *"of the opinion* that the amount of assets ... [has] changed substantially since the most recent valuation date." (Doc. 50 Ex. 5 (emphasis added)). Thus, it is ultimately within the Committee's discretion whether or not to seek a valuation. Accordingly, the court will review the actions of the Committee under an arbitrary and capricious standard of review.[7]

## II. The Valuation Date

■ The Plan generally requires that the ESOP's assets be valued as of the last day of each Plan Year. As just discussed, however, the Plan also requires additional valuations

7. Additionally, plaintiffs argue that when someone is not acting in a fiduciary capacity, the standard of review is *de novo*. They argue that "it is not clear from the record exactly who made the decision to reduce plaintiffs' full benefits."

(Doc. 50 at 11–12). Their argument makes little sense, is unsupported by the record, and in the end, is a transparent attempt to create an issue of material fact where none exists.

when the Committee believes that there has been a substantial change in the value of the assets. (Doc. 45 at 7).

Falley's contends, and plaintiffs do not effectively dispute, that substantial changes in economic and business conditions affecting Food 4 Less led the Committee to believe that the stock held by the ESOP had substantially changed in value. Thus, in accordance with Section 6.2, the Committee sought an additional valuation of the stock as of June 30, 1992. After the June 30, 1992 valuation, distribution forms were sent to all Plan Participants who were eligible to receive a distribution, including plaintiffs. (*Id.*). Falley's argues that because the Committee conducted the additional valuation exactly as directed by Section 6.2 of the Plan, it cannot have acted in an arbitrary and capricious manner (Doc. 45 at 20).

Plaintiffs concede that the Committee had no alternative but to revalue the ESOP's assets (Doc. 50 at 10). They contend, however, that they were entitled to be paid their distribution at the previous value ($19.52) reflected in the participant statements they received at the time of their terminations (Doc. 50 at 15).[8] They cite no authority supporting this position.[9]

Under the arbitrary and capricious standard, the Committee's decision should be upheld if it is reasonable and in good faith. *See Rademacher v. Colo. Ass'n of Soil Cons. Med. Plan,* 11 F.3d 1567, 1569 (10th Cir. 1993); *Woolsey,* 934 F.2d at 1460 ("The Administrators' decision need not be the only

logical one nor even the best one. It need only be sufficiently supported by facts within their knowledge to counter a claim that it was arbitrary and capricious."). There is nothing before the court suggesting that the Committee acted other than reasonably and in good faith. *Cf. Pratt,* 920 F.2d at 658–63 (holding that retroactive application of a plan amendment allowing revaluation was arbitrary and capricious on particular facts). Thus, the court finds that the Committee's decision to seek an additional valuation was not arbitrary and capricious.[10] "ERISA guarantees only the right to receive vested benefits, not a particular amount." *Ershick v. United Missouri Bank,* 948 F.2d 660, 668 (10th Cir.1991) (citing *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 512, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981)). Accordingly, the court finds that summary judgment should be granted to Falley's on this issue.

### III. ESOP Distribution Forms

Plaintiffs contend that the Committee unreasonably insisted that plaintiffs use Falley's distribution forms in lieu of the forms plaintiffs' counsel generated. Specifically, they claim that the forms provided (Doc. 45 Ex. F at 1–10) should have mentioned the requirement of Section 10.7 of the Plan that adequate security and interest must be provided for any installment payment. (Doc. 50 at 13–14).

---

**8.** Plaintiff Hayes terminated his employment with Falley's on December 29, 1990. Thus, Hayes left employment during the Plan Year (1990) preceding the year in which the other plaintiffs left (1991). Falley's notes that Hayes correctly received distribution of his benefits based on the 1990 Plan Year and understandably questions why Hayes is asserting the same theories as the other plaintiffs (Doc. 45 at 28–29). Plaintiffs offer no adequate explanation, instead claiming conclusorily that "Hayes' participant statement shows the same $19.52 valuation as the other plaintiffs for an identical time period, and therefore the following argument in support of plaintiffs' benefits also applies to plaintiff Hayes." (Doc. 50 at 6). The court rejects this unsupported argument. Even assuming the argument had merit, *i.e.,* that Hayes should be lumped in with the other plaintiffs, it would then fail for the same reasons discussed, *infra.*

**9.** Plaintiffs do cite *Roth v. Sawyer–Cleator Lumber Co.,* 16 F.3d 915, 918 (8th Cir.1994) for the general proposition that "[a]n independent appraisal is not a magic wand that fiduciaries may simply waive [sic] over a transaction to ensure that their responsibilities are fulfilled." (Doc. 50 at 15). First, *Roth* was a breach of fiduciary duty case and this is not (Doc. 40). Second, the *Roth* court was addressing fact disputes regarding the nature of an appraisal and whether it informed the fiduciary's decision to secure promissory notes with company stock. Plaintiffs fail to articulate how *Roth* supports their position and the court will not speculate on their theory.

**10.** The court notes that even under a *de novo* standard of review, it would find that the Committee acted in accordance with the Plan.

■ Falley's contends that the Committee's rejection of plaintiffs' forms was reasonable because it would have been extremely inefficient and expensive to review nonstandardized forms for each participant (Doc. 45 at 22).[11] Falley's also notes that at the time the Committee rejected plaintiffs' forms, it informed plaintiffs that they could fill out the standardized forms and attach a letter to preserve contested issues for administrative review (*Id.* at 24–25).

Moreover, Falley's notes that because the forms are subject to Plan requirements and federal law requiring adequate security and a reasonable rate of interest anyway, any "adequate security" language in the forms would be mere surplus. If plaintiffs had submitted the proper forms, Falley's asserts, they would have received adequate security and interest. (Doc. 51 at 24).

The court agrees with Falley's and sees nothing unreasonable about the Committee's position or actions regarding the forms; nor is there anything before the court suggesting bad faith on the Committee's part. *See Rademacher*, 11 F.3d at 1569. Once again, plaintiffs cite no authority supporting their position, nor could the court locate any.[12] The fact that the value of plaintiffs' stock declined while their counsel was attempting to force his perception of appropriate wording into the forms is unfortunate, but in no way reflects upon the reasonableness of the actions of the Committee. Thus, the court finds that the rejection of plaintiffs' forms was not arbitrary and capricious, and that Falley's is entitled to summary judgment on this issue.

## IV. Notice of Merger

Finally, plaintiffs contend that they did not receive notice of the merger of prior plans into the ESOP. Their argument fails for several reasons. First, plaintiffs do not controvert "that they received notice of the merger of the Prior Plans into the ESOP." (Docs. 45 at 6; 50 at 1). In other words, they concede the only fact they contend is in dispute. Second, plaintiffs dispute that they received "numerous" items of documentation regarding the merger (Doc. 50 at 3), but fail to explain how this is material to a determination of the issues in this case.

Moreover, plaintiffs fail to articulate a theory of recovery and fail to cite any appropriate authority supporting their position. Instead, they argue that "[a]lthough the Summary Plan Description states that the prior plans were merged into the ESOP, plaintiffs were not aware of the drastic diminution that would result in the value of their stock." (Doc. 50 at 16). Pointing to the volatility of Falley's stock, they argue that "Falley's could not have had the best interest of plaintiffs and other participants in mind" and conclude that "the merger itself, without careful consideration of the participants' best interests, is what is objectionable." (*Id.* at 16–17). Plaintiffs then launch into a discussion of Kansas trust law. The court cannot discern a cause of action in plaintiffs' rambling arguments.[13] Thus, the court finds there is no disputed issue of material fact and defendants are entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. For the foregoing reasons, defendants are entitled to summary judgment on plaintiffs' notice claim.

## CONCLUSION

Accordingly, Falley's and U.S. Trust's motions for summary judgment (Docs. 45, 46)

---

11. Plaintiffs contest the reasonableness of the rejection of their forms, but do not dispute that the reasons given were the basis of the Committee's decision. (Doc. 50 at 2).

12. Plaintiffs again cite *Roth,* 16 F.3d at 918, for the general proposition that deferral of payment is reasonable if adequate security and a reasonable rate of interest are provided for any credit extended (Doc. 50 at 14). The court has no quarrel with this proposition, but fails to see how it applies to the facts of this case. The issue here is not whether adequate security must be or would have been given, but rather whether adequate security language must be included on distribution forms.

13. Interestingly, plaintiffs do not even mention the governing statutory notice requirements under ERISA. *See, e.g.,* 29 U.S.C. §§ 1021, 1024(b)(1). This absence highlights the transparency of their arguments.

are GRANTED. The matter is dismissed and all relief is denied.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. *Comeau v. Rupp,* 810 F.Supp. 1172 (D.Kan.1992).

Any such motion must be filed and in the hands of opposing counsel no later than 10 days after the filing of this order. The opposing party will have 10 days thereafter to file its response. No reply may be filed. The motion and response are limited to 5 pages.

IT IS SO ORDERED.