**Leslie (Buddy) SUTHERLAND, Plaintiff,**

v.

**DAY & ZIMMERMAN, INC., and International Brotherhood of Electrical Workers, Local # 226, Defendants.**

Civ. A. No. 92–1615–FGT.

United States District Court,
D. Kansas.

July 31, 1995.

Jim Lawing, Wichita, KS, Tom C. Kelley, Tom Kelley, P.A., Topeka, KS, for Leslie (Buddy) Sutherland.

Richard C. Dearth, Dearth, Markham & Jack, Chartered, Parsons, KS, E. Leroy Autrey, Autrey & Autrey, Texarkana, AR, for Day & Zimmerman, Inc.

John M. Ostrowski, McCullough, Wareheim & La Bunker, P.A., Topeka, KS, for Local 226 IBEW.

THEIS, District Judge.

### MEMORANDUM AND ORDER

This is a hybrid action brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Plaintiff, Leslie (Buddy) Sutherland, alleges that his former employer, defendant Day & Zimmerman, did not properly calculate his seniority date according to the collective bargaining agreement and that the defendant International Brotherhood of Electrical Workers, Local # 226 ("IBEW"), breached its duty of fair representation in failing to take his grievances to arbitration. The matter is before the court on defendants' motions for summary judgment. (Doc's 22 & 30).

### I. Facts

Defendant Day and Zimmerman has operated the Kansas Army Ammunition Plant at Parsons, Kansas since 1970. Plaintiff, who had been employed as an electrician by the previous operator of the plant in 1967, was hired by Day and Zimmerman when it took over operations. Plaintiff accepted a supervisory position and transferred out of the bargaining unit for electricians and linemen in 1971. He returned to the bargaining unit on July 24, 1989.

Defendant IBEW represents electricians and linemen at the plant and has had Collective Bargaining Agreements ("CBAs") with Day and Zimmerman since 1970. The 1987–1990 CBA and the 1990–1993 CBA both provide for the filing of grievances to resolve differences between an employee and Day and Zimmerman as to matters covered by the CBA and for arbitration as the exclusive remedy for differences which are not satisfactorily settled in the grievance procedure. IBEW has ten working days in which to give notice of its intent to take a grievance to arbitration.

On July 26, 1989, two electricians filed grievances under the 1987–1990 CBA protesting Day and Zimmerman's calculation of plaintiff's seniority date. In particular, they contended that Day and Zimmerman had improperly credited plaintiff for the time he worked outside the bargaining unit as a supervisor. The grievance was settled on September 21, 1989, with plaintiff being given credit only for time he worked in the bargaining unit or in direct supervision of other electricians. This resulted in a seniority date of November 26, 1982. The decision was not appealed to arbitration.

On September 25, 1989, plaintiff filed a grievance alleging loss of seniority rights. Plaintiff contended (1) that he did have a supervisory position over persons in the bargaining unit and (2) that because he had been promoted in 1972, the language of the CBA then in effect should have controlled. The CBA in effect in 1972 provided:

> Employees promoted to any Nonbargaining Unit job prior to the effective date of this Agreement and employees promoted after the effective date of this Agreement to supervisory positions having direct or indirect supervision over employees in the Electric Department shall be carried on the Seniority List with their original seniority date for the duration of production operations....

Plaintiff contended that during the time he was not a member of the bargaining unit, he

"indirectly" supervised bargaining unit members and that, therefore, under the 1970 CBA, his seniority should have accrued during that time.

The grievance was denied, however, on the basis of the 1987–1990 CBA. The relevant provision of the 1987–1990 CBA stated as follows:

> *Sec. 7.7* An employee heretofore or hereafter promoted from the Bargaining Unit to a supervisory position with supervision of employees in the Bargaining Unit shall suffer no loss of seniority for the time spent by such employee in such supervisory position, and such employee shall continue to accrue seniority in the Bargaining Unit while serving in such supervisory position. Any such person so promoted shall, upon being reduced from such supervisory position, be permitted to exercise his or her seniority to reenter the Bargaining Unit and claim such job as he or she may be entitled to claim under the seniority rules governing reduction in force and layoff.

The 1990–1993 CBA contains an identical provision as Section 7.7(a). The 1990–1993 CBA also includes Section 7.7(b), which provides:

> Effective August 1, 1990, an employee who has heretofore been or who is hereafter promoted to a supervisory position with supervision of employees in the bargaining unit shall continue to accrue seniority for a two (2) year period. Following this period, the seniority shall freeze.

IBEW did not appeal the decision to arbitration. A letter was mailed to the plaintiff on October 10, 1989, stating the outcome of the grievance.

On October 12, 1989, plaintiff was placed on a reduction-in-force layoff based on his electrician seniority date of November 26, 1982. Plaintiff did not file a grievance regarding the layoff. He was recalled to work on November 27, 1989. Plaintiff concedes that he knew at the time of the layoff that his seniority date had been determined to be November 26, 1982. Plaintiff's seniority date has remained the same since September 21, 1989.

On January 8, 1990, plaintiff filed a second grievance alleging loss of seniority rights based on the same arguments presented in the first grievance. This grievance was denied and was not taken to arbitration.

On March 6, 1991, plaintiff filed a third grievance alleging loss of seniority rights based on the failure to accrue seniority while working outside the bargaining unit. The grievance was denied on the basis that the issue had been addressed previously and had been correctly decided.

On April 18, 1992, plaintiff filed his fourth grievance regarding seniority. Plaintiff alleged in that grievance that he had been the victim of discrimination because Day and Zimmerman gave members of the pipefitters' bargaining unit seniority credit for time working in direct or indirect supervision of other bargaining unit members pursuant to a grandfather clause in the pipefitters' CBA. The pipefitters are not represented by IBEW. The grievance was denied on May 20, 1992, on the ground that the plaintiff's seniority was controlled by the electricians' CBA and not the pipefitters' CBA. There was no appeal to arbitration.

On July 20, 1992, plaintiff filed a fifth grievance based on the application of Section 7.2 to a coworker, Charles Velia. Section 7.2 provides in relevant part: "Seniority will be separate for Electricians and Linemen. This shall not prevent an employee transferring from one unit to the other unit if a vacancy exists; however his seniority will freeze upon leaving one unit, while beginning seniority in the other." As a result of this grievance, Velia's seniority date was changed to November 23, 1982. However, Velia's electrician seniority was not frozen for a period of time when Velia remained in the electrician unit but was "temporarily utilized in the other unit."

In August 1992, plaintiff became senior to Velia pursuant to the CBA. Plaintiff filed the instant action on December 14, 1992.

## II. Standards for Summary Judgment

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal

Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

## III. Statute of Limitations

■ Hybrid breach of contract/breach of duty of fair representation actions are subject to a six-month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). The statute of limitations begins to run when the plaintiff knows or with reasonable diligence should know of the acts constituting the alleged violation. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420–21 (10th Cir.1990) (per curiam). In the usual case, this occurs when the employee is informed of the union's decision not to pursue further the employee's grievance. *Id.* at 421.

■ Defendants argue that the plaintiff's claim is barred by the six-month statute of limitations. As to the first three grievances, all of which deal with plaintiff's allegation that his seniority should have been determined under the 1970 CBA, the court agrees. These grievances were decided more than a year before plaintiff filed this action, and the plaintiff knew of the union's decision not to pursue the complaint further no later than the lay-off on October 12, 1989. The plaintiff cannot toll the statute of limitations by repeatedly filing grievances on the same issue or other issues. Therefore, plaintiff's claim that the defendants misinterpreted the CBA or that his seniority should have been decided based on the 1970 CBA is time-barred.

## IV. Duty of Fair Representation

Plaintiff's fourth and fifth grievances allege discrimination in application of the CBA's seniority provisions. This issue arguably was not raised in the first three grievances. Because this action was filed within six months of the decisions on those grievances, the action is timely as to plaintiff's claim of discrimination. Nevertheless, summary judgment is appropriate in this case because plaintiff has presented no evidence that the union breached its duty of fair representation.

■ A claim under § 301 requires the plaintiff to prove both (1) that the employer breached the CBA and (2) that the union

breached its duty of fair representation. *Aguinaga v. United Food & Commercial Workers, Int'l,* 993 F.2d 1463, 1469 n. 1 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994) (citations omitted). In this case, the court need analyze only the second element. *See Thomas v. United Parcel Service, Inc.,* 890 F.2d 909, 915 (7th Cir.1989) (plaintiff must first establish breach by union before evidence is heard against employer).

 A union's duty is to represent the interests of all employees in the bargaining unit. *Chernak v. Southwest Airlines Co.,* 778 F.2d 578 (10th Cir.1985). The union violates its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). An action is arbitrary if it is so far outside a wide range of reasonableness as to be irrational. *Aguinaga,* 993 F.2d at 1470 (citations omitted). Discriminatory action violates the union's duty if the discrimination is based on invidious distinctions "such as race, gender, national origin, or citizenship" or if it exhibits hostility based on political differences, exercise of free speech or personal animosity. *Considine v. Newspaper Agency Corp.,* 43 F.3d 1349, 1359–60 (10th Cir.1994); *Valdivia v. Ohse Foods, Inc.,* 820 F.Supp. 574, 582 n. 14 (D.Kan.1993). A claim of bad faith requires the plaintiff to show fraud or deceitful or dishonest action. *Aguinaga,* 993 F.2d at 1470 (citations omitted).

 A wide range of reasonableness must be allowed to the union in situations where the union is faced with conflicting interests within the organization. *Rucker v. St. Louis Southwestern Ry. Co.,* 917 F.2d 1233, 1238 (10th Cir.1990). The claims in this case concern situations in which the union faced conflicting interests. A decision regarding the application of the CBA's seniority provisions necessarily favors one employee or group at the expense of another employee or group. *See Volkman v. United Transp. Union,* 724 F.Supp. 1282, 1330 (D.Kan.1989), *amended on other grounds,* 770 F.Supp. 1455 (D.Kan.1991) (dealing with bargaining for seniority provisions). What-

ever the outcome of the grievance, the union could not have pleased everybody. *See Rucker,* 917 F.2d at 1239. An employee does not have an absolute right to have the union pursue a grievance through every stage and cannot compel the union to pursue a legally meritless grievance. *Valdivia,* 820 F.Supp. at 583. Furthermore, refusing to pursue even a meritorious grievance does not necessarily violate the duty of fair representation as the categories of conduct which constitute arbitrariness, discrimination, and bad faith are significantly limited. *Cox v. Boeing Co.,* 833 F.Supp. 836, 843 (D.Kan.1993), *aff'd,* 25 F.3d 1056 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 639, 130 L.Ed.2d 545 (1994).

 In this case plaintiff's claim of breach of duty of fair representation is based largely on allegations of discrimination. However, the plaintiff admitted in deposition that he is aware of no other person who was treated differently than plaintiff under Section 7.7 of the CBA. Furthermore, plaintiff alleges no disparate treatment based on improper classifications, nor on political differences or exercise of free speech. Plaintiff's unsupported allegation that decisions varied "depending on personalities or other factors" is insufficient to defeat a motion for summary judgment. Plaintiff claims discrimination relative to Charles Velia, an employee in the same bargaining unit, and employees in the pipefitters' bargaining unit. As to these employees, plaintiff can show only that he was treated differently than employees subject to different contract terms.

The only competent evidence as to why plaintiff was treated differently than "similarly situated" pipefitters shows that they operated under a different contract, negotiated by a different union and containing different seniority provisions than the electricians' CBA. In particular, the pipefitters' CBA, unlike the electricians' CBA, included a grandfather clause that protected the seniority of employees who had been promoted to indirect supervisory positions before the CBA was in force. Plaintiff contends that his seniority should have been grandfathered as well. However, plaintiff cannot base a claim of discrimination on IBEW's refusal to

seek the application of another bargaining unit's contract terms to IBEW members.

Plaintiff's claim of discrimination involving Charles Velia suffers from similar problems.[1] Plaintiff contends that his time spent working as a supervisor should be treated the same as Velia's time spent working as a lineman. However, these two situations are governed by different provisions of the CBA. Plaintiff's seniority depended upon whether an employee indirectly supervising electricians could accrue seniority. The issue as to Velia's seniority was whether an electrician who was temporarily used as a lineman could continue to accrue electrician seniority. It is not invidious discrimination to analyze each situation according to the particular contract provision that covers it. Furthermore, The court notes that in response to plaintiff's grievance, Velia's seniority was adjusted, and within months plaintiff became senior to Velia pursuant to the provision in Section 7.2.

Plaintiff filed, without leave of court, two untimely supplemental affidavits,[2] the first of which contains new allegations of discrimination relative to Velia. In that affidavit plaintiff contends that Velia, unlike plaintiff, was allowed to retain seniority earned pursuant to an earlier CBA. Procedural problems aside, the affidavit does not further plaintiff's claim. Again, plaintiff ignores key differences in the relevant contract provisions. In particular, Section 7.7 by its terms applies to employees "heretofore or hereafter promoted." Section 7.2, by contrast, contains no terms to indicate that it applies retroactively. Again, the union does not engage in invidious discrimination by applying each contract term according to its language.

 Plaintiff alleges that the union's decisions were arbitrary because they were based on inconsistent or incorrect interpretations of the CBA. The plaintiff's argument represents a misunderstanding of the legal standards. As stated above, the union's conduct must be outside a wide range of reasonableness to be actionable. The plaintiff's

burden is not just to show that his reading of the CBA is as plausible as the defendant's. *Trnka v. Local Union No. 688*, 30 F.3d 60, 61 (7th Cir.1994). *See also Deringer v. Columbia Transp. Div., Oglebay Norton Co.*, 866 F.2d 859, 864 (6th Cir.1989); *Bache v. American Tel. & Tel.*, 840 F.2d 283, 290 (5th Cir.), *cert. denied*, 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988). Rather, he must show that the union's interpretation of the CBA is not even colorable. *Trnka*, 30 F.3d at 61; *Bache*, 840 F.2d at 291. So long as a colorable argument could be made to support the union's decision that the plaintiff's grievance was meritless, the decision cannot be regarded as arbitrary. *Trnka*, 30 F.3d at 61.

In this case, the union has at least a colorable argument that its interpretation of the language in the CBA is correct. In particular, the language of Section 7.7 supports IBEW's position that under the 1987–1990 CBA, the plaintiff was not entitled to seniority credit for the time he had previously worked in a supervisory position. That plaintiff's interpretation of the contract or the underlying facts is different from the union's is insufficient to present a question for trial. *Cox*, 833 F.Supp. at 843. "It is not the function of the jury in cases such as this to second-guess the Union." *Id.*

 Finally, the plaintiff alleges bad faith in that the union's actions varied from grievance to grievance. However, the plaintiff presents no evidence of fraud, deceit or dishonesty, which is the requirement for a claim of breach of duty of fair representation based on bad faith. The plaintiff's bare allegations are insufficient to survive summary judgment. *Aguinaga*, 993 F.2d at 1470 (citations omitted).

There being no evidence of arbitrariness, invidious discrimination or bad faith in the union's decisions to abandon plaintiff's various grievances, plaintiff fails to establish a genuine issue of material fact as to whether the union breached its duty of fair representation. Because this issue is an essential

---

1. There is some question whether the issue of discrimination relative to Velia is raised in the Complaint in this case. For purposes of addressing this motion, the court will assume that the Complaint does include this issue.

2. Both affidavits were filed after the defendants had filed their reply briefs.

element in plaintiff's claims against both IBEW and Day and Zimmerman, both defendants are entitled to summary judgment.

## V. Motion to Strike

After the briefing on the summary judgment motions had been completed, plaintiff filed two supplemental affidavits. Defendant Day and Zimmerman moves to strike the second affidavit (Doc. 39) on the ground that it is irrelevant to any issue in the case. The affidavit (Doc. 38) contains allegations regarding a grievance plaintiff filed in May 1993, after he was discharged for failure to comply with company policy when taking a medical leave. In support of its motion, Day and Zimmerman asserts that its attorney contacted plaintiff's counsel and was told that plaintiff's counsel did not know of the relevance of the affidavit, but that the plaintiff had requested its filing. The court has reviewed the affidavit, and it indeed appears wholly unrelated to any issue material to the resolution of this case. The plaintiff has not responded to the motion to strike. Accordingly, the court grants defendant Day and Zimmerman's motion to strike as an uncontested motion pursuant to District of Kansas Rule 206(g).

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant Day and Zimmerman's motion for summary judgment (Doc. 22) is hereby granted.

**IT IS FURTHER ORDERED** that defendant Local #226 of International Brotherhood of Electrical Workers' motion for summary judgment (Doc. 30) is hereby granted.

**IT IS FURTHER ORDERED** that the defendant Day and Zimmerman's motion to strike (Doc. 39) is hereby granted.