Charles Ross MANGRUM and Alan G. Montierth, Plaintiffs,

v.

U S WEST COMMUNICATIONS, INC., a Colorado Corporation; Communications Workers of America, a labor organization; Communications Workers of America District 7, an administrative unit of a labor organization; and Communications Workers of America Local No. 7704, a unit of a labor organization, Defendants.

Civil No. 95–CV–487W.

United States District Court, D. Utah, Central Division.

Aug. 26, 1996.

Thomas E. Fehr, Ogden, UT, for Plaintiffs.

Floyd A. Jensen, Scott A. Hagen, Salt Lake City, UT, Gerald C. Boyle, Boyle, Tyburski, Toll & Rosenblatt, Washington, DC, Arthur F. Sandack, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

WINDER, Chief Judge.

This matter is before the court on Defendant U S West Communications, Inc.'s and Defendant Communications Workers of America's (collectively referred to herein as "Defendants") motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court has considered carefully the memoranda and other materials submitted by each of the parties relating to the Defendants' motions. The court has also considered the relevant law and facts. Having now fully considered the issues in this case, and good cause appearing, the court enters the following Memorandum Decision and Order.

### I. BACKGROUND

Plaintiffs Charles Ross Mangrum ("Mangrum") and Alan G. Montierth ("Montierth")

(referred to collectively herein as "Plaintiffs") are employees of U S West Communications, Inc. ("U S West") and, at all times relevant hereto, were members of the Communications Workers of America (the "Union").[1] As Union members, Plaintiffs' relationship with U S West was governed by a collective bargaining agreement (the "Agreement"). Pursuant to the Agreement, employees were assigned a primary reporting place ("PRP"), which is a location "used to determine the appropriate travel time, expense treatment and transportation allowances when an employee is temporarily assigned to work at a location other than their PRP." Agreement, § 8.1. Specifically, employees receive board and lodging reimbursement, travel expense reimbursement, and other benefits if the work assignment is sixty or more miles from their PRP. Id. at §§ 9.9–9.11.

In late 1990, Plaintiffs, who were both residing in the Salt Lake City area, requested a change in their PRP from Salt Lake City to Cedar City. U S West granted their request in early 1991. In spite of the change, however, neither one of the Plaintiffs moved their residence to Cedar City. In fact, throughout 1991–1993, Plaintiffs resided near Salt Lake City and were consistently assigned to jobs in northern Utah. Neither plaintiff was assigned to work in the Cedar City area. Thus, even though both Plaintiffs resided in the Salt Lake City area, they deceived board and lodging allowances as if they traveled from Cedar City, their assigned PRP, to their work locations in northern Utah.[2]

In early 1993, Irving Ransom ("Ransom"), who was then manager over Plaintiffs, evaluated the need for future COE installation work in Cedar City and determined that beyond 1993 the need was very low. Therefore, he concluded that it was unnecessary to have a COE installation employee with a PRP of Cedar City.[3] Accordingly, on March

1. During the time in question, Plaintiffs worked for U S West as Central Office Equipment ("COE") installation technicians.

2. While Plaintiffs argue that they "requested" and "expected" to work in Cedar City, they do not dispute that they did *not* live or work in the

Cedar City even though it was their designated PRP.

3. Ransom states that he determined that there was no need to have any COE installation employee with a PRP of Cedar City and thus declared the positions surplus because (1) very little

25, 1993, U S West notified the Union that it planned to make a "force adjustment" under § 19.1 of the Agreement,[4] and that the adjustment would affect only Plaintiffs. In early April of 1993, Plaintiffs were notified of the force adjustment and were offered a reassignment to identical positions in Salt Lake City.

Before accepting the reassignment to Salt Lake City, Plaintiffs consulted their Union representatives in the Communications Workers of American Local No. 7704 ("Local No. 7704"). Gail Metcalf (then vice-president of Local No. 7704) told Plaintiffs that the Union would get the matter straightened out and that they only need have a surplus to have a good grievance. In addition, Randy Warner (then President of Local No. 7704) advised Plaintiffs that the Union could not do anything for them if they did not follow their work. Accordingly, on July 4, 1993, Plaintiffs accepted the Salt Lake City positions under protest.

On July 21, 1993, Gail Metcalf filed Plaintiffs' grievances regarding the force adjustment.[5] At the "Step One" level of the grievance procedure, U S West denied the grievances, and at the "Step Two" level, the U S West representative held several informal discussions, but reached no resolution. Discussions were then held between the bargaining representatives for the Union and U S West at the "Step Three" level, but the grievances remained unresolved. Both parties understood that U S West was determined to go to arbitration, and the grievances remained at the Step Three level for some time. However, on December 2, 1994, the Union, through John R. Thompson II, and U S West agreed upon a settlement of $4000.00 for each Plaintiff. Thompson believed this was a good settlement in light of the doubtful merits of the case, and the harm such grievances presented to labor-management relations. In fact, Thompson stated in his affidavit that based on the facts presented by Plaintiffs and the relevant provisions in the Agreement, he "determined that [the] chances of success in arbitration were extremely doubtful ... [and] that the best that could be done under the circumstances was to settle the grievance."

On or about May 24, 1995, Mangrum and Montierth brought separate actions against U S West and the Union, and on August 10, 1995, their actions were consolidated. Plaintiffs allege violations of § 301 of the Labor Management Relations Act, claiming that U S West breached the Agreement and that the Union breached its duty of fair representation. Plaintiffs also brought claims of intentional infliction of emotional distress against U S West and the Union based on their conduct relating to the alleged breaches. Plaintiffs seek compensation for amounts they claim they are entitled to under § 9.11 of the Agreement for having to work more than sixty miles away from their PRP.

In response to Plaintiffs' complaint, U S West and the Union each filed a motion for summary judgment asking this court to find that based on the undisputed, material facts, they are entitled to judgment as a matter of law on both the § 301/fair representation hybrid claims and the intentional infliction of emotional distress claims. The court will consider each argument in turn.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

---

COE installation work would be needed in Cedar City after 1993, and (2) Plaintiffs were living and usually working in the Salt Lake City area. Plaintiffs, however, dispute the motive behind Ransom's determination to declare their positions surplused because they claim there was work available to be performed by employees with their level of experience in Cedar City. The motive, however, behind the determination is not a material fact which must be resolved. Section 19.1 of the Agreement which gives U S West the discretion to make a reduction in force does not on its face limit U S West's discretion in the manner advocated by Plaintiffs.

4.  Section 19.1 of the Agreement provides: "The Company shall determine when it may be necessary to make any reduction in force. When it is necessary to reduce the force the Company will notify the Union, in writing, of its intention to implement the Force Adjustment Provisions of this Article. . . ."

5.  Plaintiffs state in their memorandum that the filing of their grievances by Gail Metcalf was prompt.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v, Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991).[6] The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.), *cert. denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).[7] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically contro-

verted by the opposing party. D. Utah R. 202(b)(4).

## III. DISCUSSION

### A. The "Hybrid" § 301/Duty of Fair Representation Claims

Plaintiffs' suit is properly characterized as a "hybrid" action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[8] In a § 301 hybrid action, an employee must establish (1) that the employer breached the collective bargaining agreement, and (2) that the union breached its duty of fair representation. *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir.1994); *Nelson v. Holmes Freight Lines, Inc.*, 37 F.3d 591, 594 (10th Cir.1994); *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1469 n. 1 (10th Cir.1993), *cert. denied*, 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). Because the two claims are "inextricably interdependent," an employee must successfully prove *both* breaches to prevail against *either* the employer or the union. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983); *Considine*, 43 F.3d at 1357; *Nelson*, 37 F.3d at 594. In fact, an employee must first establish a breach of the duty of fair representation by the union before evidence is heard against the employer. *Sutherland v. Day & Zimmerman, Inc.*, 894 F.Supp. 1488, 1494 (D.Kan.1995) (citing *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 915 (7th Cir.1989)); *see also Ayala v. Union de Tronquistas de Puerto Rico, Local 901*, 74 F.3d 344, 346 (1st Cir.1996) (to "prevail in a hybrid section 301 action on a theory that the employer violated the [collective bargaining agreement], disgruntled employees must first prevail on their unfair

6. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

7. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

8. 29 U.S.C. § 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

representation claims"); *Keppard v. International Harvester Co.,* 581 F.2d 764, 766 (9th Cir.1978) ("The employee must first show that the union's handling of the grievance violated the union's duty of fair representation."). Accordingly, before reaching Plaintiffs' claims against U S West for breach of the Agreement, this court will first consider whether Plaintiffs have presented evidence sufficient to show that there is a genuine issue for trial on their claims that the Union breached its duty of fair representation.

### 1. *The Duty of Fair Representation*

A union has a duty to fairly represent the interests of all employees in a bargaining unit.[9] *Chernak v. Southwest Airlines Co.,* 778 F.2d 578, 581 (10th Cir.1985). A breach of the duty of fair representation occurs only when the union's conduct during negotiations with an employer is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1129–30, 113 L.Ed.2d 51 (1991); *Nelson,* 37 F.3d at 594, *Aguinaga,* 993 F.2d at 1470. "Acts by the union which are merely negligent do not state a claim for breach of a duty of fair representation." *Nelson,* 37 F.3d at 594 (citing *United Steelworkers of Am., AFL–CIO–CLC v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911–12, 109 L.Ed.2d 362 (1990)). Plaintiffs have claimed that the Union violated its duty of fair representation because its actions during the handling of their grievances were arbitrary, discriminatory, *and* in bad faith. The court will consider each of Plaintiffs' allegations separately below.

#### a. *The Arbitrary Standard*

■ The Tenth Circuit has stated that a union's actions are arbitrary only if they are "so far outside a 'wide range of reasonableness' as to be irrational." *Aguinaga,* 993 F.2d at 1470 (quoting *O'Neill,* 499 U.S. at 67, 111 S.Ct. at 1129–30). Plaintiffs claim that the Union's acceptance of the $4000.00 settle-

ment offer from U S West was arbitrary under this standard. Specifically, Plaintiffs state:

> the [Union's] having accepted a $4000.00 settlement offer when the expense allowance, for board and lodging ... and for using their own cars ... of which Plaintiffs had been deprived at the time [U S West] extended the settlement offer to the [Union] was approximately $33,000.00 is, indeed, so far outside a wide range of reasonableness as to be irrational.

Moreover, Plaintiffs continue: "And this is all the more true when one considers the fact ... that [Plaintiffs] were repeatedly and effectively denied the opportunity of living where they desired." Essentially, Plaintiffs are claiming that because they believe they are entitled to over $30,000.00, a settlement for a lesser amount is *per se* irrational.

In response, Defendants argue that the Union's decision to settle Plaintiffs' grievances was reasonable, and therefore *not* arbitrary, in view of the unlikelihood of success if arbitration was pursued. Specifically, the Union explained that it did not anticipate success before an arbitrator because it believed that the arbitrator would be unsympathetic to Plaintiffs' claims. The obvious purpose of the PRP provision is to compensate employees for living expenses incurred while they are required to work away from their homes. Plaintiffs, however, wanted the Union to argue before an arbitrator that even though they were living *and* working in northern Utah, they were nevertheless entitled to additional compensation under the PRP provision because their designated PRP was Cedar City. Moreover, the Union questioned its chance of success in arguing that U S West breached the Agreement by declaring a force adjustment because it determined that the plain language of Section 19.1 of the Agreement supported U S West's decision to declare the Cedar City PRP surplused.

---

**9.** The cause of action for breach of a union's duty of fair representation is implied under the scheme of the National Labor Relations Act. *Del-Costello,* 462 U.S. at 164, 103 S.Ct. at 2290–91. The duty is anchored on the principle that a union's "exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf." *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

The court agrees with Defendants that the Union's decision to settle Plaintiffs' grievances for $4000.00 each was not so far outside a wide range of reasonableness as to be irrational. In *Considine,* the Tenth Circuit concluded that where the union faced an uncertain likelihood of success in arbitration, and the employer showed no signs of retreating from its position, the union's decision to settle the grievances was not arbitrary. 43 F.3d at 1358–59. *See also Cleveland v. Porca Co.,* 38 F.3d 289, 296 (7th Cir.1994) (affirming summary judgment for union on plaintiffs' fair representation claims because union settled in light of the risk of receiving an adverse decision from the arbitrator); *Adcox v. Teledyne, Inc.,* 21 F.3d 1381, 1388 (6th Cir.) ("Union's actions in negotiating and getting ratified the [agreement] were not irrational, in view of its belief that litigation would result and that its chances of prevailing were uncertain"), *cert. denied,* 513 U.S. 871, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994); *Bovers v, Flying Tiger Line, Inc.,* 979 F.2d 291, 298 (2d Cir.1992) (finding the fact that settlement between employer and union left plaintiffs in disadvantaged position did "not mean that their interests were not fairly defended by their union [because] [t]he weak position in which they ended was a consequence of the weak position from which they began"). Similarly, in this case, the Union reviewed Plaintiffs' grievances and the relevant provisions of the Agreement and determined that the Plaintiffs had little chance of succeeding on their claims. This decision was not arbitrary. It was certainly reasonable for the Union to expect that an arbitrator would not be sympathetic to Plaintiffs' claims where it appears that they were receiving compensation for extra expenses they were not incurring, in contravention of the clear purpose of the PRP provision. Furthermore, the plain language of § 19.1 of the Agreement appears to give U S West the discretion to make a force adjustment when it finds one is necessary. Finally, even assuming that Plaintiffs' claim that U S West breached either Article 19 or 20 of the Agreement is correct, it was still a reasonable decision by the Union to settle Plaintiffs' grievances. At the most, the Agreement was ambiguous, and to avoid receiving a negative interpretation of those provisions by an arbitrator who refused to let the Plaintiffs take advantage of the PRP provision, the Union's choice to settle the claims was reasonable. *See Sutherland v. Day & Zimmerman, Inc.,* 894 F.Supp. 1488, 1495 (D.Kan.1995) ("That plaintiff's interpretation of the contract or the underlying facts is different from the union's is insufficient to present a question for trial. 'It is not the function of the jury in cases such as this to second-guess the Union.'" (quoting *Cox v. Boeing Co.,* 833 F.Supp. 836, 843 (D.Kan.1993), *aff'd,* 25 F.3d 1056 (10th Cir.), *cert. denied,* 513 U.S. 1044, 115 S.Ct. 639, 130 L.Ed.2d 545 (1994))). Therefore, because Plaintiffs have failed to provide sufficient evidence to create a genuine issue of material fact that the Union's actions were arbitrary, Plaintiffs cannot defeat Defendants' motions for summary judgment on this claim.

### b. *The Discriminatory Standard*

■ Discriminatory action violates a union's duty of fair representation "if the discrimination is based on invidious distinctions 'such as race, gender, national origin, or citizenship' or if it exhibits hostility based on political differences, exercise of free speech or personal animosity." *Sutherland,* 894 F.Supp. at 1494; *see also Considine,* 43 F.3d at 1359–60 ("[D]iscrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus.").[10] However, "classifications according to the seniority and skill level or other employment-related criteria of union members are relevant, rational, and often inevitable," and do not render them invalid. *Id.* at 1360.

■ Plaintiffs claim that the Union discriminated against them because at the time they were declared surplus, the Union was also representing AT & T installation em-

---

10. The creation of this cause of action for invidious discrimination by a union was in *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), where a group of black locomotive firemen alleged that the all-white union representing them sought to replace the black employees with white union members. *See Considine,* 43 F.3d at 1359.

**1516**

ployees who were contracting to do COE installation work in Cedar City for U S West, and that the Union "deliberately and hostilely chose not to enforce [the Agreement] in order to benefit the installers employed by AT & T to the detriment of Plaintiffs." In response to their claims, Defendants argue that Plaintiffs have failed to meet their burden to demonstrate "invidious discrimination" for two reasons. First, Defendants argue that Plaintiffs have offered no evidence that the Union considered the AT & T employees when it made its decision to settle Plaintiffs' grievances or that the AT & T employees benefitted by the Union's decision. Second, Defendants argue that even if the AT & T employees were considered by the Union in making its decision to settle, Plaintiffs have failed to allege the type of invidious discrimination necessary to prove that the Union breached its duty of fair representation.

The court agrees with both of Defendants' contentions. First, there is no evidence that AT & T employees were favored by the Union or that they benefitted by the Union's decision to settle Plaintiffs' claims. Plaintiffs' claims are based on mere speculation. Furthermore, Plaintiffs make no allegations that the Union discriminated against them based on "race, gender, national origin, or citizenship," nor do they allege that the Union's treatment of their claims "exhibit[ed] hostility based on political differences, exercise of free speech or personal animosity." Instead, Plaintiffs base their claims of discrimination solely on their "firm conviction that the [Union] deliberately and hostilely chose not to enforce the [Agreement] to benefit" AT & T employees. Without more, Plaintiffs' unsubstantiated allegations of "hostility" are insufficient to defeat Defendants' motions for summary judgment. See Sutherland, 894 F.Supp. 1488, 1494 (D.Kan. 1995) (finding employee alleged no disparate treatment based on improper classifications, nor on political differences or exercise of free speech, and his "unsupported allegation that decisions varied 'depending on personalities or other factors' is insufficient to defeat a motion for summary judgment.' ").

*c. The Bad Faith Standard*

To establish that a union breached its duty of fair representation by acting in bad faith, the plaintiff must show fraud or deceitful or dishonest action. *Considine*, 43 F.3d at 1361; *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir.1992). "The plaintiff's bare allegations are insufficient to survive summary judgment." *Sutherland*, 894 F.Supp. at 1495.

Plaintiffs base their claims that the Union acted in bad faith on two statements: (1) Gail Metcalf's statement that the Union would get the matter straightened out, and (2) Randy Warner's statement that the Union could not do anything for Plaintiffs if they did not follow their work. Plaintiffs argue that these statements are evidence of "deceptive and misleading" conduct in light of one of the Union's arguments in its memorandum supporting its motion for summary judgment. Specifically, the Union argues that because Plaintiffs accepted the Salt Lake City positions, they may have lost their chance to argue that U S West must terminate its subcontracts in Cedar City before declaring their positions "surplus." In response to Plaintiffs' claims, Defendants argue that the Union did not act in bad faith when its representatives gave advice because the statements were not fraudulent, deceitful, or dishonest. Even if the advice given was incorrect, the Defendants argue that it was not given in bad faith and is therefore not evidence of a breach of fair representation.

The court agrees with Defendants and finds that even if the advice given to Plaintiffs was poor or negligent advice, Plaintiffs have not shown that the advice was given in bad faith. In *Nelson v. Holmes Freight Lines, Inc.*, a union employee was accused of stealing mustard jars belonging to the employer which the employee claimed to believe were salvage goods. 37 F.3d 591, 593 (10th Cir.1994). A union business agent was asked to come to the facility where the employee was stationed to deal with the labor problem. *Id.* While at the facility, and after conducting an investigation, the employee told the agent that he would rather resign than have a criminal record. In response, the agent told the employee that he would not resign if he

was in the employee's position, but the agent did not inform the employee that pursuant to the collective bargaining agreement, his grievance rights would be forfeited if he resigned. *Id.* at 593–94. The employee claimed that the agent's actions resulted in a breach of fair representation. However, the Tenth Circuit concluded that while the agent's interpretation of the agreement was erroneous, even if the agent was negligent', "such negligence does not support a claim for breach of the union's duty of fair representation." *Id.* at 595. Similarly, even assuming the advice given to Plaintiffs by Randy Warner or Gail Metcalf was poor or negligent advice, there is no evidence that either Randy Warner or Gail Metcalf defrauded, deceived, or lied to Plaintiffs.

In sum, Plaintiffs have failed to produce sufficient evidence to create a material fact question as to whether the Union engaged in arbitrary, discriminatory, or bad faith conduct during the negotiations with U S West. Accordingly, because Plaintiffs have failed to prove an essential element of their hybrid claim, there is no need to consider whether U S West breached the collective bargaining agreement. Therefore, Defendants' motions for summary judgment on Plaintiffs' hybrid § 301/fair representation claims are granted.

## B. *The Intentional Infliction of Emotional Distress Claims*

■ In addition to their hybrid § 301/fair representation claims, Plaintiffs have brought state law claims against the Defendants for the intentional infliction of emotional distress. However, under the Labor Management Relations Act, " 'if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement' the state law claim is preempted." *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 529 (10th Cir.1992) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988)). Indeed, the Tenth Circuit "has specifically held that claims for intentional infliction of emotional distress are preempted by section 301." *Id.* at 530. To determine whether the state law claim is preempted by § 301, courts must look beyond the allegations of the com-

plaint to determine whether the wrong complained of arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement. *Id.* (quoting *United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. v. Bechtel Power Corp.,* 834 F.2d 884, 888 (10th Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988)). "An analysis of whether the employer acted properly or not will inevitably require an analysis of what the collective bargaining agreement permitted." *Id.*

Plaintiffs claim that they suffered from substantial stress because they were "denied the chance to work near their PRP in Cedar City ..., [were] coerced to lose that PRP, and [were] never ... given significant support form the Union." In *Johnson v. Beatrice Foods Co.,* the Tenth Circuit stated that "§ 301 pre-empts any state law claims that are 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract....' " 921 F.2d 1015, 1019 (10th Cir.1990) (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985)). Plaintiffs' claims for the intentional infliction of emotional distress are substantially dependant upon the analysis of the terms of the Agreement between the Union and U S West. To determine whether Plaintiffs were entitled to work near their PRP in Cedar City, whether the Union's advice was coercive, and whether the Union's support was significant, the court must analyze the parties' rights and obligations under the Agreement. That is, the court must understand the rights and duties under the Agreement before it can determine if the Defendants' actions were "outrageous." Thus, Plaintiffs' claims for the intentional infliction of emotional distress are preempted by § 301. *See Mock,* 971 F.2d at 530 (finding plaintiffs' claims for intentional infliction of emotional distress were preempted by § 301 because an analysis of whether the employer acted properly or not required an analysis of what the collective bargaining agreement permitted); *Johnson,* 921 F.2d at 1020 (stating plaintiff's claim for intentional infliction of emotional distress was preempted by § 301 where each of his allegations related to

his rights derived from the collective bargaining agreement). Accordingly, Defendants' motions for summary judgment on Plaintiffs' claims for the intentional infliction of emotional distress are granted.

## IV. *ORDER*

Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED that the motions for summary judgment of the Defendants are granted.