**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0421n.06
Filed: June 20, 2007

**No. 06-3538**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TIMOTHY O. PLUNKETT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SMURFIT-STONE CONTAINER CORPORATION | ) | OHIO |
| and INTERNATIONAL UNION OF OPERATING | ) | |
| ENGINEERS, LOCAL 18D, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SILER, MOORE, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Timothy Plunkett appeals the district court's grant of

summary judgment in favor of defendants Smurfit-Stone Container Enterprises, Inc. ("Stone") and

International Union of Operating Engineers, Local 18D ("the Union"). Plunkett asserted a hybrid

claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, charging

Stone with breaching the collective bargaining agreement ("CBA") and the Union with failing to

discharge its duty of fair representation. The district court concluded that Plunkett's action was

barred by the statute of limitations and, alternatively, that neither of the defendants violated § 301

of the LMRA. We AFFIRM.

Stone, which owns and operates a paper production and distribution plant located in

Coshocton, Ohio, employs over 200 hourly workers who are largely unionized and are members of

the Union. The hourly positions are structured in lines of progression, so that employees are generally promoted to a position within the same line of progression.

Pursuant to Article 10, § 8 of the CBA, if a position is eliminated, an employee may "bump" another employee with less plant seniority out of his position anywhere in the plant, except for maintenance, assuming that he can qualify as stipulated under Article, 10 §§ 1(a), (d), and (e). Relevant here, § 1(e) provides that "able and qualified shall mean the immediate ability to perform the job; ability to perform the job shall mean the ability within [a] reasonable time to learn and become proficient in the job."

Plunkett began working for Stone in 1987. For the first ten years of his employment, he worked as a hydrapulp operator. He later moved up one position in the line of progression to water treatment operator until 2001, when his position was eliminated. Plunkett then used his seniority to bump into the stock prep position. In 2002, rumors of impending job eliminations spread among employees and many became concerned about how any resulting bumps would be handled. The Union met with Stone to define a "reasonable time" for employees to qualify for any positions they bump into. A Union committee proposed that a "reasonable time" should be forty-five days, thus mirroring the forty-five-day time period already in place for job promotions. Stone accepted the committee's proposal, and the Union ratified it.

In 2003, the stock prep position was eliminated. Plunkett again exercised his bumping rights to select the job of winderman,[1] although he did not have experience in this type of work and had

---

[1] The winderman is responsible for spooling and cutting the lengths of paper that are produced at the mill.

not been exposed to any of the jobs leading up to the winderman position. Nonetheless, he undertook the challenge of learning this new position because it had a similar pay range to the stock prep position.

Plunkett alleges that when he accepted the winderman job, he believed he would have a reasonable period of time to learn and become proficient in the position. Stone informed him that he would have forty-five days to train for the job. Plunkett filed a grievance in June 2003 claiming that forty-five days was an insufficient amount of time to learn the job and that, under the CBA, he was entitled to "a reasonable time to learn and become proficient in the job." The Union denied Plunkett's grievance, stating that in a "bumping situation you have 45 days to learn and perform the job or you will go to a labor position." The next day, the Union and Stone memorialized the 2002 oral agreement regarding the forty-five-day requirement.

Following the forty-five-day qualification period, Plunkett was transferred from the winderman position to the labor pool because he was still not qualified for the job. In August 2003, he filed a grievance concerning his disqualification, claiming that the company forced him to take a pay cut and that the forty-five-day qualification period was unjust. This grievance was also denied.

In February 2004, Plunkett filed this action[2] pursuant to § 301 of the LMRA, 29 U.S.C. § 185, alleging that the Union had breached its duty of fair representation and that Stone had breached the collective bargaining contract. The district court granted summary judgment for the defendants,

---

[2] The complaint was amended in 2005, although the causes of action remained the same.

holding that Plunkett's action was barred by the statute of limitations and that neither of the defendants violated § 301 of the LMRA.

We review a district court's grant of summary judgment *de novo*, construing the record and all reasonable inferences in a light most favorable to the non-moving party. *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).

## A. Statute of Limitations

Claims brought under § 301 of the LMRA are subject to the six-month statute of limitations period of § 10(b) of the National Labor Relations Act. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). "[A] claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996). A claim will accrue when the employee is informed of the union's decision not to pursue further the employee's grievance. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 421 (10th Cir. 1990) (collecting cases where courts have held that the six-month limitation period begins to run when the employee knows or should have known of the union's decision to reject or abandon the claims of the aggrieved employee).

In this case, Stone and the Union argue that Plunkett's claims are time-barred by the six-month limitations period because his second grievance is effectively the same complaint as the first grievance – both challenge the forty-five-day qualification period. Therefore, they argue, the complaint in this case, which was filed in February 2004, was untimely because the six-month limitations period began to run in June 2003. They rely primarily on *Sutherland v. Day & Zimmerman, Inc.*, 894 F. Supp. 1488, 1491 (D. Kan. 1995), in which the plaintiff brought a hybrid

§ 301 action against his former employer and union regarding the proper calculation of his seniority date. However, more than a year earlier, the plaintiff had filed three other grievances all relating to the seniority question and each had been denied. *Id.* at 1491-93. The court held that "[t]he plaintiff cannot toll the statute of limitations by repeatedly filing grievances on the same issue." *Id.* at 1493.

Plunkett counters that the two grievances do not concern the same issue. He asserts that the first grievance pertains to the forty-five-day training period while the second relates to his disqualification. We disagree. Although Plunkett's two grievances use different terminology, the underlying issue in both is the training period. Plunkett was disqualified because he was not able to perform the job of winderman after he completed his forty-five-day training. During his deposition, Plunkett explained that his disqualification was "unjust" because he was only given forty-five days to learn the new job. The disqualification complaint is not distinct from the earlier grievance because Plunkett continued to protest the same alleged wrong. The statute of limitations began to run after Plunkett learned of the union's decision not to pursue his *first* grievance (June 2003).

Even if we were to conclude that Plunkett's complaint does not run afoul of the statute of limitations, we would also affirm the district court's judgment based on the merits of Plunkett's claims.

## B. Breach of CBA

To recover against the defendants in this § 301 suit, Plunkett must prove both "(1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Vencl v. Int'l Union of Operating Eng'rs, Local 18,* 137 F.3d 420, 424 (6th Cir.

1998) (citing *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990)). "A collective bargaining agreement is not limited solely to the specific provisions of the basic labor contract formally executed by the parties, but it may also include . . . written side agreements and oral understandings." *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1079 (9th Cir. 2002).

Plunkett argues that the "alleged" agreement between the Union and Stone recognizing forty-five days as a "reasonable time" for an employee to train and qualify for a new position following a bump did not become a part of the CBA until *after* he filed his first grievance. He states that he had no knowledge of the verbal side agreement because it did not exist when he filed his first grievance.

Yet, Plunkett discusses the Union's 2002 vote on the training period, asserting that a vote of only thirty-three people "indicates limited attendance and calls into question the procedure used to present and ratify this 'agreement.'" Plunkett cannot logically argue that the agreement did not occur or that it was not documented after discussing the vote on the oral side agreement. It is undisputed that Plunkett was unqualified for the winderman position at the end of his forty-five-day training period. Consequently, Stone did not breach the CBA when it disqualified Plunkett from work as a winderman.

C. Breach of Duty of Fair Representation

Plunkett also fails to show that the Union breached its duty of fair representation. To prove a breach of the duty of fair representation, Plunkett must demonstrate that the Union's actions or omissions in the grievance process were arbitrary, discriminatory, or in bad faith. *Garrison v.*

- 6 -

Nos. No. 06-3538
Plunkett v. Smurfit-Stone Container Corp., et al.

*Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

Plunkett only argues that the Union's actions were arbitrary. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Garrison*, 334 F.3d at 538 (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). "Moreover, ordinary mistakes, errors or flaws in judgment also will not suffice. . . . In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were wholly irrational." *Garrison*, 334 F.3d at 538-39 (citations omitted).

The denial of Plunkett's grievance was based on an agreement with the employer. The Union's decision not to challenge the forty-five-day training period cannot be said to be "wholly irrational" after a Union committee proposed the requirement as a way to clarify a "reasonable time" and discussed the merits of the time limit with Stone.

AFFIRMED.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I concur in

the judgment because I believe that the statute of limitations bars Plunkett's claims.